707 So.2d 1368 (1998)
Mark DUGAS, et ux., Plaintiffs-Respondents,
v.
Richard DURR, et al., Defendants-Relators.
No. 96-744.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1998.
James L. Piker, Baton Rouge, for Mark and Darlene Dugas, Indiv. etc.
Patrick A. Juneau, Jr., Lafayette, for Richard Durr, et al.
Before DECUIR, PETERS and GREMILLION, JJ.
DECUIR, Judge.
The plaintiffs, Mark and Darlene Dugas, filed suit against various defendants, including Sedric Breaux, alleging the rape of their minor daughter while she was in Breaux's care. Breaux filed a peremptory exception of prescription, arguing that a one-year prescriptive period applied under the facts of this case. The trial court denied the exception, finding that the three-year liberative prescriptive period set out in La.Civ. Code art. 3496.1 applied. Breaux sought supervisory writs from this court. A divided five-judge panel granted the writ, finding that the trial court erred in applying the three-year prescriptive period instead of the one-year period. The Dugases applied for a writ of certiorari from the supreme court, which remanded the case to this court for briefing, argument, and a full opinion.

FACTS
On June 28, 1994, the plaintiffs, Mark and Darlene Dugas, individually and on behalf of their minor child, Angel Faye Dugas, filed suit against Richard Durr, Janet Francis Durr, and Sedric Breaux. They alleged that some time between July 16, 1993 and August 9, 1993, their daughter, Angel, who was fourteen years old, was invited to stay overnight with Brittany, Breaux's minor daughter. At approximately 9:30 p.m., two other minors, David Durr and Trent Boudreaux, arrived at the Breaux residence and, subsequently, were left unattended and unsupervised *1369 with Angel and Brittany. The Dugases allege that Angel was raped by David during that time. The Dugases further allege that because they left Angel under the care and supervision of Breaux and his wife, Lynette, a special relationship existed between them. They argue that because of this special relationship, Breaux owed an independent duty to protect Angel, which was breached when he left her alone with David and Trent. They claim that this breach of duty was the proximate cause of the damages sustained by Angel. On November 17, 1995, the Dugases filed a first supplemental and amending petition, alleging that David had reached maturity and adding him as a defendant.
In response to the Dugases' petition, Breaux filed a peremptory exception of prescription, alleging that the events complained of actually occurred prior to June 27, 1993. Thus, he alleged that under the one-year prescriptive period allowed for delictual actions under La.Civ.Code art. 3492, plaintiffs' action had prescribed since their petition was not filed until June 28, 1994. In support of this exception, Breaux filed the affidavits of Trent and his mother, Kimrenee. In his affidavit, Trent stated that the visit when the alleged rape took place occurred prior to his family's vacation, which was between June 27, 1993 and July 2, 1993. Kimrenee testified that during that vacation, she overheard Trent and David, who had accompanied them, discussing the Dugas family's intent to charge David with rape. Also attached as an exhibit were the hotel receipts from the Boudreauxs' vacation, dated July 2, 1993. Breaux answered the Dugases' petition on December 29, 1995, denying their allegations and again arguing that their claims had prescribed.
In their opposition to Breaux's exception of prescription, the Dugases reaffirmed that Angel's visit to Brittany occurred either the last week in July or the first week in August 1993. In her affidavit, Darlene Dugas stated that she related that visit with a vacation to which Angel was invited by the Breauxs, planned for August 10, 1993. She further stated she remembered the visit because when Angel returned home, she noticed that Angel had blisters on her feet. Mrs. Dugas further stated that she did not learn about the rape until November 20, 1993. Mark Dugas also stated that the visit occurred in the last week of July or the first week of August 1993, and that he did not learn about the rape until November 20, 1993. Erica, Angel's older sister, stated in her affidavit that she learned of the incident the day after it occurred, which she testified was subsequent to her sixteenth birthday. Erica's birthday was July 6, 1993.
The Dugases also attached to their affidavits statements made to the Vermilion Parish Sheriff's Office by Trent, Kimrenee, and Lynette. They argue that these prior statements were inconsistent with the affidavits introduced by Breaux. Trent's statement indicates that the incident complained of occurred in July 1993. The Dugases argue that since they did not learn about the rape until November 20, 1993, Trent and David could not have been discussing their intentions to charge David with rape during the time Kimrenee allegedly overheard them on vacation. They also introduced Lynette's statement which indicates that the visit occurred in July 1993, and that she learned on November 20, 1993, that Erica had not informed her parents of the rape.
In support of his peremptory exception of prescription, Breaux introduced the affidavits of his wife, Lynette, and Amanda Hebert. Lynette stated David visited her home only once, on June 12 or 13, 1993. David and Trent arrived at their home at approximately 9:30 to 10:00 p.m. that evening, after which time she and her husband retired for the night at 10:30 p.m. Lynette stated that she heard the doorbell ring at about 11:00 p.m. The next morning, she heard Angel crying and found out that David had "tried to get in her pants" the night before. She attempted to tell Angel's mother on the phone, but was prevented from doing so by Erica. Lynette later learned from Brittany and Amanda, her cousin, that Amanda and Chad Gaspard came to her home and requested David's help. Lynette testified that she learned in November 1993, that the Dugases were charging David with rape. She also stated that the vacation to which Angel was invited was scheduled for July 12-16, 1993. Lynette explained that she listed July as the month in which Angel visited Brittany because that *1370 date was suggested to her by the persons investigating the rape. However, upon further reflection and upon receiving information concerning Gaspard's and Amanda's visit to her home on the evening in question, she determined that the correct date was June 12 or 13, 1993.
Amanda testified that she and Gaspard went to the Breaux residence at approximately 11:00 p.m. on June 12 or 13, 1993, to ask David to accompany them in the assistance of a matter concerning Jay Meche. Meche had earlier confronted Gaspard outside a store. Both David and Trent left with Amanda and Gaspard to confront Meche. When they, along with others, challenged Meche outside his apartment, Meche's sister called the police. As a result, Amanda, Gaspard, and Gaspard's brother were picked up for questioning. A copy of the police report lists the date of this complaint as June 13, 1993, at 11:37 p.m.
A hearing on the peremptory exception of prescription was held on March 4, 1996. In a judgment, dated March 22, 1996, the trial court denied Breaux's exception. On March 12, 1996, Breaux filed a second peremptory exception of prescription. Attached to this exception were all of the affidavits previously filed under the prior exception. The Dugases opposed this exception, and a hearing was held before the trial court on May 6, 1996. In denying the exception, the trial court held that the appropriate prescriptive period, under the facts of this case, was a three-year liberative prescriptive period pursuant to La. Civ.Code art. 3496.1. La.Civ.Code art. 3496.1 provides that "[a]n action against a person for abuse of a minor is subject to a liberative prescriptive period of three years." Abuse is defined in the Children's Code as "[t]he infliction, attempted infliction, or, as a result of inadequate supervision, the allowance of the infliction or attempted infliction of physical or mental injury upon the child by a parent or any other person." La.Ch.Code art. 603(1)(a). The trial court stated: "[I]f you define abuse and include that definition in 3496.1, [that] would be exactly what occurred or allegedly occurred in this particular situation."
Following the trial court's denial of his exception, Breaux applied for a supervisory writ to this court. On October 30, 1996, that writ was granted and made peremptory. A divided five-judge panel of this court held that the trial court erred in finding that the three-year prescriptive period in La.Civ.Code art. 3496.1 applied under the facts of this case and that the trial court erred in finding that the one-year prescriptive period in La. Civ.Code art. 3492 did not apply. See Dugas v. Durr, 96-744 (La.App. 3 Cir. 10/30/96), an unpublished writ. On January 24, 1997, in response to an application for supervisory and/or remedial writs filed by the Dugases, the supreme court ordered the case remanded to this court for briefing, argument, and a full opinion. See Dugas v. Durr, 96-2873 (La.1/24/97); 686 So.2d 854. This appeal followed.

ISSUES
On appeal, Breaux asserts that the trial court erred in denying his exception of prescription and in finding that the one-year prescriptive period in La.Civ.Code art. 3492 did not apply. He further argues that our decision overruling the trial court and finding that La.Civ.Code art. 3496.1 does not apply to the facts at hand should be affirmed.

LAW
Under the general rules of statutory construction, the following axioms should be remembered. Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent. Hutchinson v. Patel, 93-2156 (La.5/23/94); 637 So.2d 415. When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. La.Civ.Code art. 9; Billiot v. B.P. Oil Co., 93-1118 (La.9/29/94); 645 So.2d 604. The starting point for interpretation of any statute is the language of the statute itself. Touchard v. Williams, 617 So.2d 885 (La.1993). "A part or section of an act should be interpreted in connection with the rest of the act...." Hall v. Hall, 617 So.2d 204, 206 (La.App. 3 Cir.1993). Laws in pari materia, or upon the same subject matter, must be interpreted in reference to each other. La.Civ.Code art. 13. "In instances *1371 of a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character." Horil v. Scheinhorn, 95-967, p. 3 (La.11/27/95); 663 So.2d 697, 699.

DISCUSSION
In their application for writs, the Dugases argued that the trial court correctly found La.Civ.Code art. 3496.1 applicable to the facts of this case. That article provides:
An action against a person for abuse of a minor is subject to a liberative prescriptive period of three years. This prescription commences to run from the day the minor attains majority, and this prescription, for all purposes, shall be suspended until the minor reaches the age of majority. This prescriptive period shall be subject to any exception of peremption provided by law.
La.Ch.Code art. 603(1) defines abuse as:
any one of the following acts which seriously endanger the physical, mental, or emotional health of the child:
(a) The infliction, attempted infliction, or, as a result of inadequate supervision, the allowance of the infliction or attempted infliction of physical or mental injury upon the child by a parent or any other person.
....
(c) The involvement of the child in any sexual act with a parent or any other person, or the aiding or toleration by the parent or the caretaker of the child's sexual involvement with any other person or of the child's involvement in pornographic displays, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
The Dugases point to a third statute dealing with abuse of a minor, and argue that all three statutes should be read in pari materia. That statute, La.R.S. 9:2800.9, provides:
A. An action against a person for sexual abuse of a minor, or for physical abuse of a minor resulting in permanent impairment or permanent physical injury or scarring, is subject to a liberative prescriptive period of ten years. This prescription commences to run from the day the minor attains majority, and this prescription shall be suspended for all purposes until the minor reaches the age of majority. Abuse has the same meaning as provided in Louisiana Children's Code Article 603(1). This prescriptive period shall be subject to any exception of peremption provided by law.
The Dugases argue that since all three statutes deal with the abuse of a minor, and because "abuse" is defined by La.Ch.Code art. 603(1), "there can be no doubt that the legislature intended the extended prescriptive periods to include lack of supervision which allows or causes abuse to a minor." We agree.
The Dugases clearly assert that they are not claiming Sedric Breaux abused Angel through any type of physical contact. They state, "[i]n fact, plaintiffs have always maintained that the actual physical contact giving rise to the abuse of the minor Angel Faye Dugas was done by defendant David Durr." However, they claim that Breaux did commit an "abuse of a minor," as defined by La.Ch. Code art. 603, by inadequately supervising Angel while she was left in his care. La.Ch. Code art. 603 contains three different definitions of "abuse." The first deals with abuse of a minor through physical or mental injury; the second deals with "[t]he exploitation or overwork of a child by a parent or any other person"; and the final definition pertains to the involvement of the minor in sexual acts. As pointed out by Breaux in his brief, the only definition containing a reference to "inadequate supervision" is the one involving physical and mental abuse. The allegations are clear that Angel suffered sexual abuse. Breaux contends that La.Ch.Code art. 603(1)(a) is inapplicable in this case because La.Ch.Code art. 603(1)(c) governs sexual abuse, and it does not proscribe abuse as a result of "inadequate supervision."
Prescription statutes are to be strictly construed against prescription and in favor of the obligations sought to be extinguished by them. Wimberly v. Gatch, 93-2361 (La.4/11/94); 635 So.2d 206; Bouterie v. Crane, 616 So.2d 657 (La.1993). Breaux's reading of the statute is overly narrow and robs the provision of its proper context. It is primarily a statute defining abuse. The fact that abuse is sexual does not diminish the fact that it is physical and likely mental abuse as well. Moreover, the inclusion of La.Ch.Code art. 603(1)(c) does not require *1372 reducing the protection provided by La.Ch. Code art. 603(1)(a). In fact, we find that La.Ch.Code art. 603(1)(c) broadens the definition of abuse by including participation in pornographic displays which might not actually encompass physical or mental abuse.
Accordingly, we find that the three-year liberative prescription of La.Civ.Code art. 3496.1 is applicable to the inadequate supervision claim against Breaux.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed to appellant.
AFFIRMED.
GREMILLION, J., concurs and assigns reasons.
GREMIILLION, Judge, concurring.
Because it is my opinion that La.Ch.Code art. 603(1) governs sexual abuse and does not proscribe abuse as a result of "inadequate supervision," I respectfully concur with my colleagues in this opinion. If the Legislature had intended to expand Article 603(1) to include sexual abuse as a result of inadequate supervision in its definition, it is my belief the Legislature would have done so.
However, I concur with the majority in that I would find the Dugases' petition was filed timely under the doctrine of contra non valentum. See Wimberly v. Gatch, 93-2361 (La.4/11/94); 635 So.2d 206. It is my opinion that the doctrine applied to suspend prescription until November 20, 1993, when the Dugases first learned of the alleged rape. In her affidavit, Darlene stated that she learned about the alleged rape that day in the parking lot of the National Supermarket from two of Angel's friends. When Angel confirmed this information, Darlene immediately reported the incident to the Vermillion Parish Sheriff's Office. The Dugases were also led to believe that fethe incident occurred in July 1993, because statements given by Trent and Kimrenee to the Sheriff's Office indicated the incident occurred that month. Had an earlier date been reported in the statements, the Dugases might have filed their petition earlier. Since the Dugases' cause of action is grounded in inadequate supervision, and they did not learn of their cause of action until November 20, 1993, through no fault of their own, it is my opinion that the petition was timely filed because prescription did not commence to run until that date.